# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

JOHN W. BRANTIGAN,

    Plaintiff,

    v.

DEPUY SPINE, INC.,

    Defendant.

Case No. C08-0177RSL

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL RESPONSES TO HIS FIRST SET OF DISCOVERY

## I. INTRODUCTION

This matter comes before the Court on plaintiff's motion to compel defendant to provide documents and information in response to his fist set of interrogatories and requests for production. For the reasons set forth below, the Court grants in part and denies in part plaintiff's motion.[1]

## II. DISCUSSION

Dr. John Brantigan is an orthopedic surgeon who has invented and developed devices and methods to treat patients who suffer from degenerative disc disease and/or damage to

---

[1] Because the Court finds that this matter can be decided on the parties' memoranda, declarations, and exhibits, the parties' request for oral argument is denied.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO COMPEL - 1

intervertebral discs. Defendant is the successor in interest to a company to which plaintiff assigned the rights to some of his inventions in exchange for royalties.

Plaintiff alleges that defendant has refused to pay him royalties owed and refused to use its best efforts to market his products, despite its contractual obligation to do so. Specifically, the contract requires defendant to use its "best efforts to commercialize and sell any commercially viable components of the Systems." Declaration of Katharine Saunders, (Dkt. #31) ("Saunders Decl."), Ex. 1 at ¶ 4(d). Plaintiff contends that defendant has violated this provision by promoting less effective and less safe non-royalty bearing products at the expense of royalty-bearing products.

DePuy is obligated to pay plaintiff for royalty-bearing products which include (1) "System Implants," which are the "implant device components of any of the Systems," and (2) "System Instruments," which are the "surgical instrument components of any of the Systems." Id. at ¶ 1(g), (h). The term "System" is defined to include "any interbody fusion implant system, including any and all interbody fusion implant devices and surgical instruments directly utilized in connection with such implants, developed as a result of any Project, with all modifications, improvements and changes that may be made in any aspect or feature of such system over time." Id. at ¶ 1(f).

The parties have met and conferred as required by Rule 37. However, they were unable to resolve this dispute.

**A.     Discovery on All Interbody Fusion Devices.**

In his discovery requests, plaintiff has sought information and documents regarding defendant's research and development of interbody fusion devices, and the safety and efficacy of its interbody fusion devices, and to identify all persons who have served as project managers, distributors, sales managers, principal investigators and/or regional managers for any interbody fusion device. Plaintiff has defined the term "interbody fusion device" much more broadly in

his discovery requests than it is defined in the parties' contract.[2] Plaintiff's discovery definition encompasses every product used to "treat vertebral, disc or spinal damage" and would require defendant to disclose information and documents regarding *all* of its 8,700 parts, including documents regarding defendant's research, design, development, engineering, use, testing, or sampling of all of the products. Defendant argues that plaintiff is not entitled to any discovery on products and devices beyond "interbody fusion devices" as that term is defined in the parties' contract.

Plaintiff contends that he is entitled to the discovery requested to identify products for which he is entitled to royalties and to determine which products are clinical substitutes for his products as related to his best efforts claim. He argues that in addition to the products specifically listed in the contract, he is also entitled to royalties on "'[a]ll implant device components' and all 'surgical instrument components' used with those products and sold be DePuy." Plaintiff's Reply at p. 2 (citing the contract at ¶ 1(f)-(h)). He claims that he cannot identify those products without the discovery because some of the products could have been developed without his participation or knowledge.

Plaintiff's requests, however, are not tailored to ascertain the universe of royalty-bearing or substitute products. Instead, they seek broad categories of information that is only relevant for products that actually fall into one of those two categories. For example, plaintiff seeks information on the products' safety and efficacy, but that information is only relevant to products that defendant allegedly promoted to the detriment of royalty-bearing products.

Rather than seeking broad discovery on *all* of defendant's products, plaintiff should be able to identify the relevant products. He is familiar with defendant's products because he has used them in his surgical practice, he was a member of defendant's advisory panel and received

---

[2] The term "interbody fusion device" is defined in the contract to include "the I/F cages covered by the Brantigan Patents, the ramps covered by the Steffee patent 5,443,514 and the patent application serial no. 287.096 and other cage devices with irregular non-yielding surfaces for facilitating bone ingrowth . . . ." Saunders Decl., Ex. 1 at ¶ 1(c).

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO COMPEL - 3

regular updates about its products, and he audited defendant's records to obtain information regarding allegedly unpaid royalties. He should be able to identify the devices he claims are at issue based on those sources and based on whatever information he has that led him to file his claims, which are subject to the standards in Rule 11. Plaintiff cannot simply allege that defendant is wrongfully promoting other less safe or less effective products, then use discovery to find out which products fit that description. In fact, in pre-litigation correspondence, plaintiff did identify three specific products allegedly promoted at the expense of his products, highlighting that it is possible to narrow his request. Declaration of Kathleen Burke, (Dkt. #42), Ex. 4. Similarly, the contract specifically identifies the royalty-bearing products that existed when the contract was executed. Furthermore, to the extent that plaintiff claims he lacks information to identify relevant products, other avenues of discovery are available to discover how the products are used rather than seeking broad categories of information regarding all of defendant's products.

Accordingly, defendant will not be required to provide discovery on all "interbody fusion devices" as plaintiff has defined that term in his discovery requests.

### 2. Discovery Regarding Pedicle Screws.

Plaintiff also alleges that defendant has refused to provide discovery regarding the design and development of pedicle screws, even though he is receiving royalties for at least one pedicle screw. Plaintiff argues that the documents and information are relevant to whether defendant is making royalty payments on all covered devices. Defendant argues that plaintiff has been paid a royalty on only one pedicle screw, which is "not a true pedicle screw" but a component of the royalty-bearing Ocelot cage system. Defendant's Opposition at pp. 8-9. Although the parties dispute whether plaintiff is entitled to royalties on the pedicle screws, he is entitled to conduct discovery about them to determine whether they are royalty-bearing products. Plaintiff is entitled to royalties on "interbody fusion devices and surgical instruments *directly utilized in connection with such implants*." (emphasis added). Defendant's own advertising materials

stresses that the pedicle screws and plate products "are intended for use" with some of the royalty-bearing products. Declaration of William Christianson, (Dkt. #41), Ex. 2 at p. 31 ("The [royalty-bearing] OCELOT Stackable Cage System is intended for use with supplemental internal fixation. The supplemental internal fixation systems that may be used with the Stackable Cage System include DePuy Spine titanium plate or rod systems [nine examples listed including pedicle screws]"). In addition, although defendant vaguely notes that it manufactures "a number" of pedicle screws, it does not identify how many or show that production would be unduly burdensome. Accordingly, defendant must produce design and development information regarding pedicle screws marketed during the term of the contract.

### 3. Interrogatory No. 9.

Interrogatory No. 9 seeks the date on which defendant contends the contract will expire, including "the last of any 'U.S. Patent issued in connection with any Project Inventions and/or System' [as that phrase is used in the contract] will expire and the basis for your contention." The term of the contract is a central issue in this case. Despite the obvious relevance of the information sought, defendant argues that it cannot provide its response because plaintiff has not identified the patent that he alleges extends the contract term until 2023. Defendant, however, must provide its interpretation of the contract regardless of plaintiff's position. Furthermore, plaintiff has provided his position, albeit belatedly. Moreover, although defendant states that it has no current position on the expiration date, it took a definite position in pre-litigation correspondence, and despite plaintiff's invitation, it has not disavowed that position. Accordingly, defendant must provide a complete response to this interrogatory.

### 4. Discovery Regarding the Charite Artificial Disc and Devex Products.

Defendant argues that plaintiff is not entitled to royalties on the Devex family of products. Defendant, however, did not address or counter plaintiff's assertion that Devex is an interbody fusion device and a potential substitute for royalty-bearing products. Information regarding those products is therefore relevant to plaintiff's best efforts claim.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION TO COMPEL - 5

Similarly, plaintiff argues that defendant has wrongfully withheld information on the Charite device, despite admitting that it was an "alternative" to the Cougar product developed by Dr. Brantigan. Saunders Decl., Ex. 13. Plaintiff contends that the information sought is relevant to his claim that defendant has breached the "best efforts" clause of the contract. Although defendant disputes the relevance of the documents, its conclusory statement of lack of relevance has not refuted plaintiff's best efforts contention. Accordingly, plaintiff is entitled to discovery on the Devex family of products and the Charite device.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART plaintiff's motion to compel (Dkt. #30) as set forth above. In sum, defendant must provide a complete response to interrogatory no. 9 and the requested information regarding pedicle screws, the Devex family of products, and the Charite device within twenty days of the date of this order.

DATED this 12th day of September, 2008.

Robert S. Lasnik
United States District Judge